O

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         CENTRAL DISTRICT OF CALIFORNIA
10
11   NORMA JEAN DAVIS,                ) Case No. EDCV 13-464-OP
                                      )
12                    Plaintiff,      )
                                      )
13          v.                        ) MEMORANDUM OPINION AND
                                      ) ORDER
14   CAROLYN W. COLVIN, Acting        )
     Commissioner of Social Security, )
15                                    )
                      Defendant.      )
16   _____)
17         The Court[1] now rules as follows with respect to the disputed issues listed in
18   the Joint Stipulation ("JS").[2]
19   / / /
20   / / /
21   / / /
22
23   _____
24         [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
     United States Magistrate Judge in the current action.  (ECF Nos. 6, 7.)
25
26         [2] As the Court stated in its Case Management Order, the decision in this
     case is made on the basis of the pleadings, the Administrative Record, and the Joint
27   Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules
     of Civil Procedure, the Court has determined which party is entitled to judgment
28   under the standards set forth in 42 U.S.C. § 405(g).   (ECF No. 4 at 3.)

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)    Whether the Administrative Law Judge ("ALJ") erred in rejecting the functional capacity assessment of Plaintiff's treating physician, Dr. Wang;

(2)    Whether the ALJ properly discounted Plaintiff's credibility; and

(3)    Whether the ALJ's finding that Plaintiff could perform the alternative job of appointment clerk is based on a valid finding that the position exists in significant numbers in the regional or national economy.

(JS at 7.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

1

**III.**

2

**DISCUSSION**

3

**A.    The ALJ's Findings.**

4       The ALJ found that Plaintiff has severe physical impairments, including a

5  history of lumbar disc disease with radicular pain, status post surgical intervention;

6  times three in the 1990s and once in July 2007; post laminectomy pain syndrome

7  treated with epidurals and a morphine pain pump; a history of arachnoiditis; and

8  hypertension.  (Administrative Record ("AR") at 73.)

9       The ALJ further found that Plaintiff had the residual functional capacity

10  ("RFC") to perform light work, limited by the following accommodations:  lift and

11  carry twenty pounds occasionally and ten pounds frequently; stand and/or walk

12  two hours out of eight; sit six hours out of eight provided that she can change

13  position every thirty minutes; limited to work requiring no more than occasional

14  kneeling, reaching above shoulder level, or use of stairs and ramps; precluded from

15  complex work or work requiring stooping, crouching, using ladders, or performed

16  at unprotected heights; work not requiring greater than occasional pedal

17  operations; frequent fine and gross manipulation with the upper extremities; and

18  frequent reaching below shoulder level bilaterally.  (Id. at 73-74.)  The ALJ also

19  anticipated that Plaintiff would be absent from work up to twice per month.  (Id. at

20  74.)

21       Relying on the testimony of the VE, the ALJ determined that Plaintiff was

22  able to perform the sedentary occupation of appointment clerk (Dictionary of

23  Occupational Titles ("DOT") No. 237.367-010).  The VE testified there are 36,000

24  such positions in the national economy, and 700 such positions in the regional

25  economy,[3] but that for an individual with Plaintiff's age, education, work

26

27       [3]  In the ALJ's decision, these two numbers were erroneously switched.  (AR

28  at 78 ("The vocational expert indicated there are 36,000 such positions in the

(continued...)

3

experience, and RFC, the numbers would be eroded by thirty percent (e.g., to 25,200 jobs nationally and 490 regionally).  (AR at 78.)

**B.    The ALJ Failed to Properly Reject the Opinion of the Treating Physician.**

Plaintiff contends that the ALJ erred in giving no weight to the functional capacity opinions of her orthopedic surgeon, Jeffrey Wang, M.D., who has been treating her since February 2007.  (JS at 8.)

Specifically, in a February 25, 2010, letter Dr. Wang opined:

> After her physical therapy [following the 2007 surgery] after about a year after surgery she more recently became stable.  The prognosis for recover [sic] in a sense is that it is unlikely that she will fully recover and I think she has reached maximal medical improvement at the current time and this will probably be a lifelong condition.  I think the patient is disabled to the point where she is unable to do full-time work and I think this will last beyond 12 months.

(AR at 1042.)

Then, in a February 29, 2010, Lumbar Spine Impairment Questionnaire ("Questionnaire"), Dr. Wang stated that in an eight-hour day, Plaintiff could sit no more than two hours, and stand/walk no more than three hours, with the need to get up and move around for five minutes at thirty-minute intervals; could lift and carry up to ten pounds frequently and twenty pounds occasionally; Plaintiff's symptoms would periodically interfere with her ability to maintain attention and concentration; she would be capable of tolerating no more than moderate workplace stress; and she would need to take unscheduled breaks once or twice a day for five to ten minutes each.  (Id. at 1043-49.)  Dr. Wang did not respond to an

---

[3](...continued)
regional economy and 700 such positions in the national economy . . .").)

item on the Questionnaire seeking his estimate of how often Plaintiff is likely to be absent from work as a result of her impairments or treatment. (Id. at 1048.)

The ALJ rejected Dr. Wang's functional capacity opinions based on the following:

> Dr. Wang's opinion on the ultimate issue of a disability is unpersuasive. His opinion is a vocational one and not a medical one. He does not ascribe any specific functional limitations in his February 2010 correspondence and merely regurgitates her medical history. Four days later on February 29, 2010 he completed a lumbar spine impairment questionnaire and provided functional limitations. He somewhat inconsistently commented that "I believe the patient is stable but, unfortunately, I do believe that this is a chronic condition that is stable at the current time and will not improve. Moreover, it appears that he is quite generous in accepting the claimant's subjective complaints of pain and discomfort in formulating his residual functional capacity assessment especially in light of the lack of significant objective findings. He did not observe an abnormal gait, found only slight sensory loss and reflex changes, no evidence of muscle spasm, muscle atrophy, trigger points, crepitus or swelling. Yet, his assessment of the claimant's functional capabilities was grossly accommodative in finding that the claimant could sit no more than two hours out of eight, stand no more than three hours out of eight, lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently and unable to push, pull, kneel, bend or stoop. Although he indicated that the claimant was unable to perform full-time work, he did not anticipate that the claimant would be absent from work even one day per month as a result of her impairment or treatment.

(Id. at 75-76 (citations omitted).)

5

1    It is well established in the Ninth Circuit that a treating physician's opinion
2    is entitled to special weight, because a treating physician is employed to cure and
3    has a greater opportunity to know and observe the patient as an individual.
4    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  In addition, more
5    weight is generally given to the opinion of a specialist about medical issues related
6    to his or her area of specialty than to the opinion of a source who is not a specialist.
7    See 20 C.F.R. § 404.1527(d)(5).  "The treating physician's opinion is not,
8    however, necessarily conclusive as to either a physical condition or the ultimate
9    issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The
10   weight given a treating physician's opinion depends on whether it is supported by
11   sufficient medical data and is consistent with other evidence in the record.  20
12   C.F.R. §§ 404.1527(d), 416.927(d).  Where the treating physician's opinion is
13   uncontroverted by another doctor, it may be rejected only for "clear and
14   convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v.
15   Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion
16   is controverted, as will be assumed to be the case here, it may be rejected only if
17   the ALJ makes findings setting forth specific and legitimate reasons that are based
18   on the substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th
19   Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th
20   Cir. 1987).  The ALJ can "meet this burden by setting out a detailed and thorough
21   summary of the facts and conflicting clinical evidence, stating his interpretation
22   thereof, and making findings."  Thomas, 278 F.3d at 957 (citation omitted)
23   (internal quotation omitted).

24   Preliminarily, with respect to the ALJ's comment that Dr. Wang "somewhat
25   inconsistently" commented on the stability of Plaintiff's condition, the Court
26   agrees with Plaintiff (see JS at 11-12) that there does not appear to be an internal
27   inconsistency in the quoted statement.  "Chronic" and "stable" are two different
28   concepts and do not appear to be mutually exclusive – as noted by Plaintiff, "[a]

6

condition can very clearly be both persistent and unchanging and not expected to improve." (JS at 11-12.) Thus, this is not a specific and legitimate reason for discounting the opinions of Dr. Wang.

The ALJ also noted that Dr. Wang's opinion on the ultimate issue of disability was "unpersuasive," and a vocational opinion rather than a medical one. (AR at 75.) The Court notes that the fact that a treating physician has rendered an opinion that can be characterized as an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ rejected Dr. Wang's opinion on the ground that it was internally inconsistent. (AR at 75.) For instance, the ALJ notes that in the February 24, 2010, correspondence, Dr. Wang "merely regurgitates" Plaintiff's medical history and provides no specific functional limitations, yet four days later he completes a questionnaire wherein he does provide functional limitations. (Id.) Although internal inconsistency is a legitimate reason for discounting the opinion of a treating physician, the ALJ's statement in this case is not sufficiently specific to determine exactly what about this chronology the ALJ finds "inconsistent." Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific, legitimate reason for rejecting a treating physician's opinion).

Along the same lines, the ALJ also rejected Dr. Wang's opinion as inconsistent with his lack of objective findings as reported in the Questionnaire, and as appearing to generously accept Plaintiff's subjective complaints of pain and discomfort. (AR at 75.) The ALJ noted that in contrast to the February 24, 2010, correspondence opining a complete inability to work, Dr. Wang's Questionnaire responses indicate that he did not observe an abnormal gait, found only slight sensory loss and reflex changes, and no evidence of spasm, atrophy, trigger points,

1    crepitus, or swelling.  (<u>Id.</u> (citation omitted).)  Again, although inconsistency with

2    treatment notes is a legitimate reason for rejecting a treating physician's opinion,

3    the Court does not find this reason as set forth by the ALJ in his decision, to be

4    sufficiently specific.  Indeed, it borders on the ALJ substituting his own medical

5    judgment for that of the physician.  It is inappropriate for the ALJ to do so.

6    <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate

7    for an ALJ to substitute his own medical judgment for that of a treating physician);

8    <u>see also</u> <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975) (noting that

9    hearing examiner was not a qualified medical expert).  Moreover, the ALJ never

10   reviewed the rest of Dr. Wang's medical records with respect to whether they were

11   consistent or inconsistent with Plaintiff's subjective complaints.

12          Finally, the ALJ appears to have assumed that Dr. Wang's failure to indicate

13   that Plaintiff would be "absent from work even one day per month as a result of her

14   impairment or treatment" is indication of yet another inconsistency with his

15   opinion of her complete inability to work, and that if Dr. Wang truly believed

16   Plaintiff could not work, he would have responded with one of the four options in

17   the question.[4]  (AR at 76 (citing <u>id.</u> at 1044).)  While that is certainly one way to

18   interpret Dr. Wang's failure to respond to that portion of the question, the Court

19   agrees with Plaintiff that there are other scenarios that are equally plausible.  (<u>See,</u>

20   <u>e.g.</u>, JS at 13-14.)  Thus, while this may be a specific reason for rejecting Dr.

21   Wang's opinion, the Court does not find it to be legitimate.

22

23   _____

24          [4] The Questionnaire asks the physician to indicate whether the "patient's

25   impairments [are] likely to produce 'good days' and 'bad days.'"  (AR at 1048.)  If
     the physician has responded "yes" to that question, it goes on to ask the physician

26   to estimate, on the average, how often the plaintiff is likely to be absent from work:
     (1) more than three times a month; (2) about two to three times a month; (3) about

27   once a month; or (4) less than once a month.  (<u>Id.</u>)  Dr. Wang responded "yes" to

28   the initial question but did not provide the requested follow-up response.  (<u>Id.</u>)

1     The Commissioner argues that the ALJ's RFC assessment is supported by
2  substantial evidence in the record and, therefore, the Court should "reject
3  Plaintiff's argument and affirm the ALJ's RFC finding." (Id. at 14.) The
4  Commissioner points out that the ALJ incorporated the restrictions testified to by
5  the medical expert in his RFC assessment (id. at 16); argues that the ALJ properly
6  rejected Dr. Wang's opinion in favor of Dr. Jensen's because "Dr. Jensen's
7  findings were consistent with the weight of the evidence in the record, including
8  Dr. Wang's own clinical findings" (id. at 16-17); disparages the use of the "check-
9  the-box" form (something the ALJ did not do) (id. at 17); accepted the ALJ's
10 conclusion regarding Dr. Wang's failure to indicate whether Plaintiff would be
11 absent from work (id. at 18); reviewed Dr. Wang's treatment notes from past office
12 visits (something the ALJ did not do) (id. at 18-19); reviewed other physician's
13 notes as supporting the ALJ's RFC assessment (id. at 19-21); and argues that the
14 ALJ properly found that Dr. Wang's findings were largely based on Plaintiff's
15 subjective complaints of pain "which the ALJ properly found less than credible"[5]
16 (id. at 21).

17     The Court finds that the Commissioner's attempts to salvage the decision
18 fail because this Court is required "to review the ALJ's decision based on the
19 reasoning and factual findings offered by the ALJ–not post hoc rationalizations
20 that attempt to intuit what the adjudicator may have been thinking." Bray v.
21 Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Stout v. Comm'r
22 Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that the court is
23 "constrained to review the reasons the ALJ asserts" for the denial of benefits and
24 "cannot affirm the decision of an agency on a ground that the agency did not
25 invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874
26 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

27
28
———————————
[5] The Court does not agree with this conclusion. (See infra Part III.C.)

9

1  Furthermore, while there may otherwise be substantial evidence in the record to
2  support the ALJ's RFC assessment, this fact is irrelevant in light of the ALJ's
3  failure to provide legally valid reasons for rejecting the opinion of the treating
4  physician.

5      Based on the foregoing, the Court directs the ALJ on remand to reconsider
6  the medical evidence and provide specific and legitimate reasons for rejecting the
7  opinions of Dr. Wang, assuming the ALJ again determines that to be appropriate.

8  **C.    The ALJ Failed to Properly Consider Plaintiff's Credibility.**

9      Plaintiff contends that the ALJ provided only one reason for finding her
10  symptoms and limitations to be not credible, and that reason is "far from clear and
11  convincing." (JS at 23.) Specifically, Plaintiff notes that the ALJ found that
12  Plaintiff's activities of daily living, which the ALJ defined as being able to take
13  recreational walks; doing basic household chores; being able to drive, go places
14  alone, and grocery shop; and her ability to carry a basket of light laundry and a bag
15  of groceries; is consistent with his RFC determination. (Id.) She contends that
16  these activities are not demonstrative of an ability to perform full-time regular
17  work at any exertional level. (Id. at 23-24 (citing Vertigan v. Halter, 260 F.3d
18  1044, 1049-50 (9th Cir. 2001), Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir.
19  2004).)

20      An ALJ's assessment of pain severity and claimant credibility is entitled to
21  "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
22  Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a
23  claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must
24  make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th
25  Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also
26  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that
27  claimant was not credible is insufficient).

28

1    Once a claimant has presented medical evidence of an underlying
2    impairment which could reasonably be expected to cause the symptoms alleged,
3    the ALJ may only discredit the claimant's testimony regarding subjective pain by
4    providing specific, clear, and convincing reasons for doing so.  Lingenfelter v.
5    Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  An ALJ's credibility finding must
6    be properly supported by the record and sufficiently specific to ensure a reviewing
7    court that the ALJ did not arbitrarily reject a claimant's subjective testimony.
8    Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).

9        An ALJ may properly consider "testimony from physicians . . .  concerning
10   the nature, severity, and effect of the symptoms of which [claimant] complains,"
11   and may properly rely on inconsistencies between claimant's testimony and
12   claimant's conduct and daily activities.  See, e.g., Thomas, 278 F.3d at 958-59
13   (citation omitted).  An ALJ also may consider "[t]he nature, location, onset,
14   duration, frequency, radiation, and intensity" of any pain or other symptoms;
15   "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and
16   adverse side-effects of any medication"; "[t]reatment, other than medication";
17   "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or
18   inadequately explained, failure to seek treatment or follow a prescribed course of
19   treatment"; and "ordinary techniques of credibility evaluation," in assessing the
20   credibility of the allegedly disabling subjective symptoms.  Bunnell, 947 F.2d at
21   346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v.
22   Comm'r of Soc. Sec. Admin., 169 F.3d 595,  600 (9th Cir. 1999) (ALJ may
23   properly rely on plaintiff's daily activities, and on conflict between claimant's
24   testimony of subjective complaints and objective medical evidence in the record);
25   Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on
26   weak objective support, lack of treatment, daily activities inconsistent with total
27   disability, and helpful medication); Johnson, 60 F.3d at 1432 (ALJ may properly
28   rely on the fact that only conservative treatment had been prescribed); Orteza v.

1  Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's
2  daily activities and the lack of side effects from prescribed medication);
3  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly found
4  that the claimant's "tendency to exaggerate" was a factor supporting his
5  determination that she was not credible).

6       With respect to Plaintiff's testimony, the ALJ stated only the following:

7            The claimant's testimony at the hearing failed to credibly establish
8       functional limitations greater than that found herein.  [¶]  She testified
9       that she has a history of four back surgeries; 1993, 1994, 1995 and 2007
10      and has a pending workers compensation claim.  She testified that there
11      were no further surgical procedures anticipated.  She said that the pain
12      pump was inserted in February 2009 and that she last had surgery in
13      2007.  Her statements of record at Exhibit 3E page 1 [AR at 177-79] are
14      consistent with her testimony at the hearing in that she enjoys taking
15      recreational walks.  She is able to perform household chores such as
16      cleaning, changing sheets, mopping the floors and dusting (Exhibit 3E
17      page 2).  She is able to drive, go places alone, grocery shop and said that
18      she could carry a basket of light laundry and a bag of groceries.  Her
19      activities of daily living are certainly consistent with the ability to
20      perform work within the residual functional capacity assessment found
21      herein.

22  (AR at 76-77.)

23      A review of the record shows that at the hearing, in addition to her testimony
24  about her activities of daily living, Plaintiff also testified that her pain pump had
25  "alleviated a lot of the pain," but that there was still "a lot of breakthrough pain,"
26  and a lot of low back pain that radiates down both her legs, especially when her
27  activity level is increased.  (Id. at 32.)  She testified that she can only stand for
28  thirty minutes before the pain gets worse, and if she stands, walks, or sits, for more

than thirty minutes, the pain escalates.  (<u>Id.</u> at 32-33, 40, 45, 46.)  She also testified that her medication makes her moody, irritable, and very tired (<u>id.</u> at 40); and she needs to lay down and ice her back for at least thirty minutes when she stands or sits too long (<u>id.</u>).  She admitted that it took her forty-five minutes to drive to the hearing but stated she had a lot of leg and back pain when she arrived.  (<u>Id.</u> at 41.) She claimed that the most she could lift without hurting her back was about fifteen pounds but that she could not consistently carry about ten pounds for twenty minutes of every hour (<u>id.</u> at 44); she takes medication for breakthrough pain in the morning and evening (<u>id.</u> at 45); sleeps a couple of hours during the day about three days a week (<u>id.</u>); and during a typical day she "putter[s] around, reads, watches television, makes lunch, walks outside if it is not too hot, and sometimes goes out to eat with her husband (<u>id.</u> at 47).

After reviewing the record, the Court finds that the ALJ has not provided clear and convincing reasons for discounting Plaintiff's testimony.  That Plaintiff's activities of daily living are consistent with the RFC appears to consider only a small portion of her testimony and actually appears to accept and take into consideration her statements regarding her activities of daily living, not reject them.  Much of her testimony is not discussed by the ALJ at all, and, at least some of it would appear to be inconsistent with the RFC.  For instance, her testimony that she cannot stand, sit or walk, for more than thirty minutes at a time without having to lie down and ice her back would appear to be inconsistent with an RFC that contemplates standing and or walking for two hours out of eight, or sitting six hours out of eight with only a provision for a change in position every thirty minutes.  (<u>See</u> <u>id.</u> at 73.)

The Commissioner contends that the ALJ "largely based" his credibility finding on the fact that Plaintiff's described activities were inconsistent with the impairments she described.  (JS at 26 (citations omitted).)  As just discussed, this would appear to misstate the record with respect to the ALJ's consideration of

13

1   Plaintiff's activities of daily living.  The Commissioner also suggests that the ALJ

2   discredited Plaintiff's testimony (1) because of inconsistencies between her

3   testimony at the hearing, and statements she made in her Exertion Questionnaire

4   and in her self-reports to various physicians (id. at 27); and (2) because the

5   objective evidence in the record does not support her statements as to the intensity

6   and persistence of her symptoms (id. at 27-29).  However, the ALJ's decision

7   never makes any indication that Plaintiff's hearing testimony was inconsistent with

8   any of her other statements.  And, although the ALJ spends a lot of time discussing

9   the objective medical findings (AR at 74-76), he does not explicitly discuss the

10  objective evidence in relation to Plaintiff's subjective complaints.[6]  Again, these

11  arguments appear to be inappropriate post-hoc rationalizations.

12       Based on the foregoing, the Court finds that the ALJ failed to provide clear

13  and convincing reasons, supported by substantial evidence in the record, for

14  rejecting Plaintiff's subjective complaints.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20

21       [6]  Of course, an ALJ "may not reject a claimant's subjective complaints

22  based *solely* on a lack of objective medical evidence to fully corroborate the

23  alleged severity of pain."  Bunnell, 947 F.2d at 345 (emphasis added).  However,

    such a factor remains relevant.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir.

24  2005) (ALJ may properly rely on inconsistency between claimant's subjective

25  complaints and objective medical findings); Morgan, 169 F.3d at 600 (ALJ may

    properly rely on conflict between claimant's testimony of subjective complaints

26  and objective medical evidence in the record).  In this case, the ALJ never

27  mentions the relationship between Plaintiff's subjective complaints and the

    medical evidence.  Indeed, the ALJ never specifically states that he in any way

28  discounts Plaintiff's testimony, let alone provide any reasons for doing so.

**D.** **The ALJ's Finding of Significant Numbers of Jobs in the National Economy Was Valid.**

**1.** **Background.**

Plaintiff argues that the ALJ's finding that Plaintiff could perform the job of appointment clerk is based on a valid finding that the position exists in significant numbers in the regional or national economy.  (JS at 29.)

Specifically, the VE testified that in light of Plaintiff's RFC and past job experience, she had no transferable skills to light work, but she would be capable of performing work only as an appointment clerk, a sedentary occupation.  (AR at 57-59, 61 ("ALJ: As far as I'm concerned, the only job right now that we're looking at that she possibly could do was appointment clerk. . . .  [¶] VE: That's it.")  The VE further testified that in light of the hypothetical limitations posited by the ALJ, the number of appointment clerk positions in the regional and national economies would be eroded by about 30%, to about 25,200 jobs nationally and 490 regionally.  (Id. at 58.)

**2.** **Pertinent Law.**

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by obtaining testimony from an impartial VE.  Here, the only job identified by the VE was the job of appointment clerk.  (AR at 58-59.)

In Beltran v. Astrue, the Ninth Circuit determined that 135 jobs in the region where the claimant lived did not constitute "significant numbers" of jobs.  Id., 700 F.3d 386, 390 (9th Cir. 2012) (citing Walker v. Matthews, 546 F.2d 814, 820 (9th Cir. 1976)).  The court stated that where jobs are "very rare or generally

1   unavailable to the claimant due to his limitations," an ALJ errs in finding that

2   significant numbers of jobs exist. <u>Beltran</u>, 700 F.3d at 389. "Although, in <u>Walker</u>,

3   we never established what number of jobs qualifies as 'very rare' or generally

4   unavailable, a comparison to other cases shows that this case fits comfortably

5   within <u>Walker</u>'s purview. We have never set out a bright-line rule for what

6   constitutes a 'significant number' of jobs. However, a comparison to other cases is

7   instructive." <u>Id.</u> The court then compared the 135 local jobs existing in that case

8   to the numbers of local jobs the Ninth Circuit previously had found significant. <u>Id.</u>

9   The court observed that the 135 local jobs constituted only approximately 11

10  percent of the lowest number of local jobs the Ninth Circuit previously had found

11  significant. <u>Id.</u> The court concluded that 135 jobs in a single region "qualifies" as

12  a "very rare" number and therefore is not "significant." <u>Id.</u>

13        In this case, Plaintiff claims the ALJ erred in relying on the VE's testimony,

14  as they were not able to find a single case in which fewer than 1,000 jobs in the

15  relevant region constitutes a "significant number." (JS at 30.) The Court notes that

16  several pre-<u>Beltran</u> cases apparently found that as few as 125 regional jobs to be

17  significant. <u>See, e.g.</u>, <u>Barker v. Sec'y of Health and Human Servs.</u>, 882 F.2d 1474,

18  1478-79 (9th Cir. 1989) (relying in part on a District of Arizona case that held that

19  30-40% of 500-600 relevant positions (i.e., as little as 125 available positions)

20  constituted a significant number, and an Eight Circuit case finding 500 jobs in the

21  region to be significant) (citing <u>Uravitch v. Heckler</u>, No. CIV-84-1619-PHX-PGR,

22  1986 WL 83443, at *1 (D. Ariz. May 2, 1986) and <u>Jenkins v. Bowen</u>, 861 F.2d

23  1083, 1087 (8th Cir. 1988)); <u>see also</u> <u>Craigie v. Bowen</u>, 835 F.2d 56, 58 (3d Cir.

24  1987) (appearing to deem 200 local jobs "significant" at least insofar as that

25  number is a clear indication that there exists in the national economy other

26  substantial work the claimant could perform). In a post-<u>Beltran</u> case, the District

27  Court found 900 regional jobs to be significant. <u>Yelovich v. Colvin</u>, 532 Fed.

28  App'x 700, 702 (9th Cir. 2013) (finding 900 jobs in the local region "significant,"

and observing that in <u>Barker</u>, the Ninth Circuit referenced cases finding as few as 500 local jobs "significant").  Although a close call, the Court finds that the 490 regional jobs identified in this case constitutes a significant number.

Even assuming, however, that 490 does not constitute a "significant number" of jobs in the regional economy, the VE also testified that there were approximately 25,200 such jobs nationally (after eroding 30% for the RFC limitations).  Pursuant to <u>Beltran</u>, "the 'significant number of jobs' can be *either* regional jobs . . . *or* in several regions of the country . . . .  [¶] If we find *either* of these two numbers 'significant,' then we must uphold the ALJ's decision." <u>Beltran</u>, 700 F.3d at 389-90; <u>see also</u> <u>Gutierrez v. Comm'r of Soc. Sec.</u>, --- F.3d --- - , 2014 WL 241873, at *9 (9th Cir. Jan. 23, 2014) (citing <u>Beltran</u>, 700 F.3d at 389-90).

In <u>Gutierrez</u>, the Ninth Circuit, after affirming the ALJ's decision that 2,500 jobs constitute significant work in the region of California, noted that even if 2,500 regional jobs was not significant, it must then consider whether 25,000 jobs in the nationwide economy would be considered significant "in the context of 'several regions of the country'" pursuant to <u>Beltran</u>.  <u>Gutierrez</u>, 2014 WL 241873, at *9 (citing <u>Beltran</u>, 700 F.3d at 390)).  Moreover, such an analysis must be undertaken in light of 20 C.F.R. § 416.966(b), which states that "'[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in the national economy.'" <u>Id.</u>  The court noted that the ALJ's finding that 25,000 national jobs is sufficient "presents a close call."  <u>Id.</u> (citing <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 nationwide jobs significant); <u>Thomas</u>, 278 F.3d at 960 (622,000 nationwide jobs significant); <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs significant); <u>Beltran</u>, 700 F.3d at 390 (1,680 nationwide jobs *insignificant*); and <u>Johnson v. Chater</u>, 108 F.3d  178, 180 (8th Cir. 1997) (10,000 national jobs significant)).  The Ninth Circuit concluded that "[a] finding

17

1   of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in

2   'very limited numbers,'" and, therefore, the ALJ's national job finding, that 25,000

3   jobs constituted a significant number, satisfies the statutory requirements because it

4   represents a significant number of jobs in several regions of the country.  Id.

5          Thus, in this case, the Court finds no error in the ALJ's finding that 25,200

6   jobs in the national economy constitutes a significant number of jobs.

7   **E.     This Case Should Be Remanded for Further Proceedings.**

8          The law is well established that the decision whether to remand for further

9   proceedings or simply to award benefits is within the discretion of the Court.  See,

10  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at

11  603; Lewin, 654 F.2d at 635.  Remand is warranted where additional

12  administrative proceedings could remedy defects in the decision.  Lewin, 654 F.2d

13  at 635.

14         The Court finds that the ALJ committed legal error by not providing clear

15  and convincing reasons for discrediting Plaintiff's subjective statements of

16  limitation, and for not providing specific and legitimate reasons for rejecting the

17  opinion of Plaintiff's treating physician, Dr. Wang.  It appears to the Court that this

18  is an instance where further administrative proceedings would serve a useful

19  purpose and remedy defects.  Accordingly, this action must be remanded to allow

20  the ALJ to properly consider the opinion of Plaintiff's treating physician and

21  Plaintiff's subjective complaints of impairment, and to provide legally sufficient

22  reasons for rejecting either, if the ALJ again determines rejection is warranted.[7]

23  / / /

24  / / /

25

26                              **IV.**

27

28

_____

[7] The Court expresses no view on the merits.

18

**ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS
ORDERED that Judgment be entered reversing the decision of the Commissioner
of Social Security, and remanding this matter for further administrative
proceedings consistent with this Memorandum Opinion.


Dated: January 30, 2014

HONORABLE OSWALD PARADA
United States Magistrate Judge

19